IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

GENE C. BOCK, SR.,

Plaintiff,

vs.

CAROLYN W. COLVIN, acting Commissioner of Social Security,

Defendant.

No. 3:13-cv-0109-HRH

# O R D E R

This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff has filed a motion for summary judgment,[1] to which defendant has responded.[2] Oral argument was not requested and is not deemed necessary.

## Procedural Background

Plaintiff is Gene C. Bock. Defendant is Carolyn W. Colvin, acting Commissioner of Social Security.

---

[1]Docket No. 11.

[2]Docket No. 17.

Plaintiff filed an application for disability benefits under Title II of the Social Security Act, alleging that he became disabled on October 8, 2011. Plaintiff alleged that he was disabled because of a lacerated nerve, radial artery, and tendons on his right wrist. Plaintiff's application was denied initially and upon reconsideration. After a hearing on September 4, 2012, an administrative law judge (ALJ) denied plaintiff's claim. On April 16, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's October 22, 2012 decision the final decision of the Commissioner. On June 19, 2013, plaintiff commenced this action in which he asks the court to find that he is entitled to disability benefits.

General Factual Background

Plaintiff was born on January 5, 1954. He was 58 years old at the time of the hearing. Plaintiff has a high school education plus has taken some technical courses. Plaintiff is married and lives with his wife. Plaintiff is right-hand dominant. Plaintiff's past relevant work was as a television/appliance salesman and repairman and a computer repair technician.

On October 8, 2011, plaintiff was injured while working on the roof of an airplane hangar he was building. "[H]e slipped and fell and he was trying to keep from falling 16 feet to the ground and he was gripping onto the sheet metal and it tore the back side of his hand on the radial side."[3]

---

[3]Admin. Rec. at 207.

## ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2016."[4]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[5]

---

[4]Admin. Rec. at 25.

[5]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The plaintiff has the burden of proof at steps one through four. Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The Commissioner has the burden of proof at step five. Id.

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since October 8, 2011, the alleged onset date...."[6] At step two, the ALJ found that plaintiff "has the following severe impairments: right wrist soft tissue injury; status post right wrist tendon and nerve reparative surgery; [and] rheumatoid arthritis."[7]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[8] The ALJ specifically considered whether plaintiff met Listings 1.08 (soft tissue injury) and 14.09 (inflammatory arthritis).[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [he]: is limited to jobs that would allow him to alternate between sitting and standing positions for 15 minutes once an hour throughout the day; cannot manipulate objects smaller than the size of a paperclip with the left hand; and must avoid concentrated exposure to noise.[[10]]

---

[6] Admin. Rec. at 25.

[7] Admin. Rec. at 25.

[8] Admin. Rec. at 27.

[9] Admin. Rec. at 27.

[10] Admin. Rec. at 28.

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment."[11] The ALJ found plaintiff's statements less than credible because they were inconsistent at times and because the limitations plaintiff claimed were inconsistent with the medical evidence.[12] The ALJ found "the fact that [plaintiff] felt capable of operating an airplane in August of 2012 despite his alleged disabling impairments undercuts the credibility of his allegations...."[13]

The ALJ also found some of plaintiff's statements about his daily activities inconsistent with his claim of total disability. The ALJ noted that plaintiff "testified that he is able to drive for 1/2 hour,[[14]] which ... requires enough grip strength to open the car door, manipulate the car keys in order to start the vehicle, and turn the steering wheel."[15] The ALJ also noted that

---

[11] Admin. Rec. at 29.

[12] Admin. Rec. at 29-30.

[13] Admin. Rec. at 31. On August 3, 2012, plaintiff "present[ed] to" Dr. Hall to "have paperwork done for FAA & disability." Admin. Rec. at 248. Plaintiff began seeing Rod A. Hall, D.O., at Health North Family Clinic in February 2010. Admin. Rec. at 254.

[14] At the hearing, plaintiff testified that he could drive "at least about a half an hour and roughly 20 miles." Admin. Rec. at 48.

[15] Admin. Rec. at 31.

plaintiff "testified that he drinks several cups of coffee a day,[[16]] which ... involves a degree of fine manipulation and grip strength in order to grasp the cup handle and lift it to one's mouth."[17]

The ALJ found that plaintiff's "treatment seeking behavior with respect to his lacerated right wrist is not consistent with what one might expect to see in a person experiencing a disabling physical impairment."[18] The ALJ found "it more likely than not that [plaintiff's] lone visit with Ms. Gaston[[19]] suggests that the function of [plaintiff's] right wrist is not as limited as he alleges...."[20]

The ALJ also found plaintiff's symptom statements less than credible because his arthritis symptoms "are well controlled by medication."[21] The ALJ noted that plaintiff's statement that he continued to take Tramadol occasionally for pain[22] was inconsistent with the

---

[16]In describing his typical day at the hearing, plaintiff testified that he drank a couple of cups of coffee each morning while reading the news on the internet. Admin. Rec. at 58.

[17]Admin. Rec. at 31.

[18]Admin. Rec. at 31.

[19]Plaintiff saw Teri Gaston, an occupational therapist, once on November 2, 2011, although she recommended that plaintiff "be seen 3 times per week for 6 weeks." Admin. Rec. at 210-211.

[20]Admin. Rec. at 31.

[21]Admin. Rec. at 31.

[22]At the hearing, plaintiff testified that he takes Tramadol for pain "but I try to keep it (continued...)

medical records because plaintiff told Dr. Hall that he had stopped taking Tramadol because of the side effects.[23] The ALJ also noted that plaintiff never asked Dr. Hall for a different pain medication, which she found "undercuts [his] allegations ... because it suggests that [his] alleged debilitating pain is not as continuous and limiting as he alleges."[24]

The ALJ found that "[s]ome of [plaintiff's] statements suggest that he has the tendency to overstate the persistence and limiting effects of his symptoms."[25] As an example, the ALJ noted that in his December 7, 2011 Pain Questionnaire,[26] plaintiff stated "that the pain in his right hand, forearm and wrist was 'always there' and occurs 'all the time.'"[27] The ALJ explained that if plaintiff had constant pain "[o]ne would expect to see notes reflecting the complaints of right hand pain in [his] medical records. Yet, there is no mention in Dr. Hall's treatment records that [plaintiff] ever complained of pain in his right hand, forearm, or wrist."[28]

---

[22](...continued)
down because I don't care for the way the narcotics make me feel." Admin. Rec. at 51-52.

[23]Admin. Rec. at 32. On February 22, 2011, plaintiff told Dr. Hall. that the "tramadol has worked ok. Only used it a couple times. It makes him tired but not 'loopy.'" Admin. Rec. at 252.

[24]Admin. Rec. at 32.

[25]Admin. Rec. at 32.

[26]Admin. Rec. at 176-178.

[27]Admin. Rec. at 32.

[28]Admin. Rec. at 32.

The ALJ also noted that plaintiff testified that he saw "Dr. Hall once every other week, or approximately twice a month" but that Dr. Hall's treatment records "show that [plaintiff] appeared for 5 office visits over the course of 6 months[.]"[29] The ALJ explained that "[b]ecause the medical evidence shows that [plaintiff] overstated the frequency that he goes to the doctor, I find it likely that [he] also overstated the limiting effects of his impairments."[30] The ALJ found that "Dr. Hall's medical opinion that [plaintiff's] prognosis was 'good' in August 2012 also tends to show that [plaintiff] overstates the effect that his arthritis has on his ability to perform work activities."[31]

The ALJ considered Dr. Hall's August 3, 2012 opinion[32] but gave little weight to this opinion because the sole purpose of plaintiff's visit that day "was to have Dr. Hall complete

---

[29]Admin. Rec. at 32.

[30]Admin. Rec. at 32.

[31]Admin. Rec. at 32.

[32]Dr. Hall opined that plaintiff could walk 1/2 block; continuously sit for more than 2 hours and sit for at least six hours in an 8-hour work day; stand continuously for 30 minutes; stand/walk for less than 2 hours in an 8-hour work day; needs to shift at will from sitting and standing; needs to take unscheduled breaks every 15 to 30 minutes and that these breaks would last 10 to 15 minutes; could occasionally lift/carry 20 pounds; could use his hands to grasp, turn, and twist objects 5% of the day; could use his fingers for fine manipulation 10% of the day; could use his arms for reaching 25% of the day; could twist and bend at the waist 25% of the day; should avoid exposure to extreme heat and cold, high humidity, fumes, odors, dusts, gases, perfumes, cigarette smoke, soldering fluxes, solvents/cleaners, and chemicals; could occasionally twist, stoop, and crouch; could never climb ladders and stairs; and would be absent from work more than twice a month. Admin. Rec. at 242-244.

paperwork for [plaintiff's] Social Security Disability application and FAA pilot's license."[33] The ALJ also gave little weight to Dr. Hall's opinion because he had only been plaintiff's treating physician for six months, his treatment notes were "sparse", and his notes "do not adequately specify what clinical observations caused him to reach his opinions."[34]

The ALJ gave great weight to Dr. Caldwell's opinion[35] because "he is ... familiar with the Social Security Administration's regulations and definitions, which I find provided Dr. Caldwell an educated platform upon which to base his opinions" and because he "reviewed [plaintiff's] entire medical evidence of record up to that time, which I find further provided Dr. Caldwell a sufficient factual basis upon which to base his opinions."[36] The ALJ gave minimal weight to Dr. Innes' opinion,[37] "to the extent that he rendered any," because he only saw

---

[33]Admin. Rec. at 30.

[34]Admin. Rec. at 33.

[35]On February 3, 2012, Jay Caldwell, M.D., a non-examining source, opined that plaintiff could occasionally lift/carry 35 pounds; frequently lift/carry 10 pounds; stand/walk about 6 hours per day; sit about 6 hours per day; was limited frequently as to pushing and pulling with his right extremity; could occasionally kneel; had no limitations as to climbing, balancing, stooping, crouching, or crawling; had no limitations on the left as to reaching, handling, fingering, or feeling; was limited on the right as to handling, fingering, and feeling, "more likely than not ... frequently[,] [b]ut this is a fluid situation[;]" should avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise, and fumes/gases; and should avoid moderate exposure to vibration and hazards. Admin. Rec. at 235-248.

[36]Admin. Rec. at 33.

[37]Scott Innes, M.D., performed surgery on plaintiff's right wrist on October 8, 2011 and on November 10, 2011. Admin. Rec. at 213-222. Dr. Innes never expressed any opinion as to (continued...)

plaintiff twice and "thus his relationship with [plaintiff] was limited."[38] The ALJ also gave minimal weight to Ms. Gaston's opinions, even though "she is not an acceptable medical source," because she "only saw [plaintiff] on 1 occasion in November of 2011, and thus she was unable to provide any additional opinions as to how [plaintiff']s strength and grip may have improved since she last saw [him] 11 months ago."[39]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work...."[40]

At step five, the ALJ found that plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy...."[41] The ALJ found that plaintiff's transferable skills from his past relevant work at Dan's TV and Appliance were "basic customer service skills, basic information imparting skills, and basic information sharing skills."[42] As for plaintiff's past relevant work

---

[37](...continued)
plaintiff's functional capacities.

[38]Admin. Rec. at 33.

[39]Admin. Rec. at 33. Gaston noted a lack of grip strength on the right, a lack of sensation on the radial side of plaintiff's right thumb, and some range of motion limitations as to the right wrist and thumb. Admin. Rec. at 208.

[40]Admin. Rec. at 34.

[41]Admin. Rec. at 35.

[42]Admin. Rec. at 34.

as a computer repair technician for his wife's business, the ALJ found that plaintiff's transferable skills were "basic computer skills, basic customer service skills, and basic information imparting skills."[43] The ALJ acknowledged that plaintiff denied answering the phone or using a computer keyboard for data entry while working for his wife, but she noted that in his Work History Report,[44] plaintiff reported that his duties included "assist[ing] w/ reception/office, computer keyboard."[45] The ALJ also acknowledged that plaintiff's wife filled out his Work History Report, but she found "that as the claimant's employer and sole supervisor, the claimant's wife was accurately able to list the duties that the claimant performed during that work."[46] Thus, the ALJ found "that the claimant more likely than not performed tasks that included basic office reception and computer keyboarding."[47]

Based on the vocational expert's testimony,[48] the ALJ specifically found that plaintiff's transferable skills would allow him to work as a receptionist, an information clerk, or a

[43] Admin. Rec. at 35.

[44] Admin. Rec. at 181-183.

[45] Admin. Rec. at 35.

[46] Admin. Rec. at 35.

[47] Admin. Rec. at 35.

[48] Patricia Ayerza testified as the vocational expert at the hearing.

telemarketer.[49] The ALJ explained that "[t]he vocational expert testified that the claimant's previous work is so similar to the jobs recited above that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."[50] The ALJ concluded that "although the claimant's additional limitations do not allow the claimant to perform the full range of sedentary work, considering the claimant's age, education and transferable work skills, a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 201.07,[[51]] section 201.00(f) of the Medical-Vocational Guidelines, and 20 CFR 404.1568(d)."[52] Thus, the ALJ found that plaintiff "has not been under a disability, as defined in the Social Security Act, from October 8, 2011, through the date of this decision...."[53]

---

[49]Admin. Rec. at 36.

[50]Admin. Rec. at 36.

[51]"Pursuant to Rule 201.07, a claimant of advanced age who is limited to sedentary work, has a high school degree, can perform skilled or semi-skilled work, and has transferrable skills is 'not disabled.'" Tommasetti v. Astrue, 533 F.3d 1035, 1043 (9th Cir. 2008). "Rule 201.07 is augmented by Rule 201.00(f), which states that '[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age ..., there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry.'" Id.

[52]Admin. Rec. at 36.

[53]Admin. Rec. at 36.

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred in failing to include in her RFC the manipulative limitations of his dominant right hand. The ALJ found that plaintiff

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [he]: is limited to jobs that

> would allow him to alternate between sitting and standing positions for 15 minutes once an hour throughout the day; cannot manipulate objects smaller than the size of a paperclip with the left hand; and must avoid concentrated exposure to noise.[[54]]

The ALJ did not include any limitations as to plaintiff's right hand or wrist. Plaintiff argues that this was error and that the ALJ should have included the right hand limitations assessed by Dr. Caldwell because she gave Dr. Caldwell's opinion great weight. Dr. Caldwell opined that plaintiff would have "some limitations" on the right as to reaching, handling, fingering, and feeling, "more likely than not ... frequently...."[55]

"[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine, 574 F.3d at 690. Defendant concedes that the ALJ erred in failing to include right hand limitations in plaintiff's RFC[56] but argues that the error was harmless because the three occupations identified by the vocational expert could be performed by someone with the right hand limitations that Dr. Caldwell assessed. Defendant contends that Dr. Caldwell opined that plaintiff would be limited to frequent handling, fingering, and feeling with his right hand. "Frequently" for Social Security purposes means between one-third and two-thirds of an eight-hour day. SSR 85-15. Defendant argues that it is reasonable to assume that Dr. Caldwell used the term "frequently" as a term of art common in Social Security proceedings.

---

[54]Admin. Rec. at 28.

[55]Admin. Rec. at 237.

[56]Amended Defendants's Brief at 5, Docket No. 17.

If plaintiff were limited to frequent handling, fingering, and feeling with his right upper extremity, then defendant argues that plaintiff would still be able to perform the jobs of a receptionist, information clerk, and telemarketer. The receptionist job requires no more than frequent handling and no more than occasional fingering and no feeling. The information clerk job requires no more than occasional handling and no fingering or feeling. And, the telemarketer job requires occasional handling, frequent fingering, and no feeling. Thus, defendant argues that an individual with the right hand limitations found by Dr. Caldwell is capable of performing the jobs identified by the vocational expert.

As plaintiff is quick to point out, Dr. Caldwell may not have opined that plaintiff had the capacity to perform fingering, handling, and feeling frequently, but rather that, as the ALJ noted, plaintiff "would frequently be limited when using his right upper extremity."[57] Plaintiff insists that Dr. Caldwell opined that the level of limitation would be frequent, not that the capacity to perform would be frequent, which is what defendant contends. Plaintiff points out that on a different part of the RFC form, Dr. Caldwell noted that as to pushing and pulling, plaintiff was "limited in the upper extremities" ... R[ight] frequently."[58] Plaintiff argues that this statement by Dr. Caldwell makes it clear that Dr. Caldwell believed that plaintiff would be frequently limited as to his right upper extremities.

---

[57]Admin. Rec. at 33.

[58]Admin. Rec. at 235.

But even if Dr. Caldwell meant that plaintiff could only occasionally handle, finger, or feel, defendant argues that the ALJ's error would still be harmless because plaintiff could perform the job of information clerk. The information clerk job requires no more than occasional handling and no feeling or fingering.

Defendant's harmless error argument fails, in part, because it is based on a factual determination that the ALJ never made. Although the ALJ gave Dr. Caldwell's opinion great weight, the ALJ did not include the right hand limitations that Dr. Caldwell opined plaintiff had. The court can only affirm an "ALJ's decision based on the reasoning and factual findings offered by the ALJ...." Bray, 554 F.3d at 1226. More importantly, defendant's harmless error argument fails because this error was not "inconsequential to the ultimate nondisability determination." Stout, 454 F.3d at 1055. Rather, the ALJ's failure to include all of plaintiff's functional limitations in his RFC means that the ALJ's step five findings are not supported by substantial evidence. "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of the particular claimant.'" Valentine, 574 F.3d at 690 (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). "If the hypothetical does not reflect all the claimant's limitations, ... the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). Here, the hypotheticals the ALJ gave to the vocational expert were incomplete, and thus the vocational expert's testimony

has no evidentiary value. As a result, the ALJ's step five findings, including her transferability of skills analysis,[59] are not supported by substantial evidence. The ALJ's failure to include any right hand or wrist manipulative limitations in the RFC is reversible error.[60]

Plaintiff next argues that the ALJ erred because she failed to consider that prior to his alleged disability onset date, he had an excellent and steady work history dating back to at least 1973. Plaintiff argues that this steady work history should have been considered in the evaluation of his disability application. See SSR 96-7p (in assessing credibility, ALJ should consider claimant's "prior work record"); Taybron v. Harris, 667 F.2d 412, 415 n.6 (3rd Cir. 1981) ("when the claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility"). Plaintiff contends that while an excellent work history is not controlling, it is a factor that must at least be considered and it was error for the ALJ not to do so.

To the extent that the ALJ failed to consider plaintiff's work history, this error was harmless because the ALJ gave numerous other reasons for finding plaintiff's pain and symptom testimony less than credible. See Batson v. Comm'r of Social Sec. Admim., 359 F.3d

---

[59]SSR 82-41 provides that "[a]ll functional limitations included in the RFC (exertional and nonexertional) must be considered in determining transferability."

[60]Because the ALJ's transferability of skills analysis was flawed due to the ALJ's failure to include all functional limitations in the plaintiff's RFC, the court need not consider plaintiff's arguments that the ALJ erred in finding that there would be little to no vocational adjustment and that the ALJ improperly "parsed out" tasks from some of his prior jobs and then treated those tasks as though they themselves were past relevant work.

1190, 1197 (9th Cir. 2004) (harmless error if some of ALJ's reasons for rejecting credibility are rejected and some are upheld as long as the ALJ's credibility finding remains supported by substantial evidence). Plaintiff does not challenge any of the reasons the AL gave for finding his pain and symptom testimony less than credible and thus the ALJ's credibility finding remains supported by substantial evidence.

Finally, plaintiff argues that the ALJ applied the wrong standard for disability in this case. The ALJ found that "while [plaintiff's] use of ... both his right and left hands is limited, he is not so limited that he is considered 'disabled' under the Social Security Act."[61] The ALJ stated that she "reach[ed] this finding in part because the medical evidence does not support [plaintiff's] allegations of a complete inability to work."[62] Plaintiff argues that the standard for disability is not "a complete inability to work" but rather in this case, the standard was whether he possessed skills that were readily transferable to a significant range of semi-skilled work. Plaintiff insists that he was not required to prove a "complete inability to work" and thus the ALJ erred in finding that he was not disabled.

This argument is meritless. When the ALJ's decision as a whole is considered, it is clear that she applied the correct standard, which was that individuals of an advanced age with a

---

[61] Admin. Rec. at 29.

[62] Admin. Rec. at 29.

high school education who are limited to sedentary work are not disabled if they have skills that will transfer to other occupations with little vocational adjustment.

Because the ALJ erred in assessing plaintiff's RFC, the court must determine whether to remand this action for further proceedings or for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. Here, a remand for further proceedings is appropriate because "the ALJ's residual functional capacity determination was flawed and the hypothetical question was incomplete and included incorrect assumptions." Hill v. Astrue, 698 F.3d 1153, 1162-63 (9th Cir. 2012).

## Conclusion

Based on the foregoing, the decision of the Commissioner is reversed, and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 5th day of February, 2014.

/s/ H. Russel Holland
United States District Judge